IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JOHN B. FRANKLIN | § | |
| VS. | § | CIVIL ACTION NO. 1:09-CV-931 |
| BRYAN DOYLE, ET AL | § | |

### MEMORANDUM REGARDING DEFENDANTS JEFFERSON COUNTY AND G. MITCH WOODS' MOTION FOR SUMMARY JUDGMENT

Pending before the Court is defendants' Jefferson County ("Jefferson County") and G. Mitch Woods' ("Woods") Motion for Summary Judgment (docket entry no. 57).  Defendants seek summary judgment as to Plaintiff John B. Franklin's ("Plaintiff") civil rights claims for excessive use of force pursuant to 42 U.S.C. § 1983, in violation of the Fourth and Fourteenth Amendments.  Having reviewed the pending motion, the submissions of the parties, the pleadings, and applicable law, the Court is of the opinion that defendants' motion for summary judgment should be granted.

The above-styled action was originally referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case by United States District Judge Marcia A. Crone.  Consent of the parties to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) was entered on January 31, 2011.

## I. BACKGROUND

*A.  Parties*

Plaintiff, John B. Franklin is currently a resident of Walker County, Texas.[1]  Defendants

Doyle and Johnson were former officers of the Jefferson County Jail where the incident at issue in

this suit took place.  Defendant Jefferson County is a municipality which operates the Jefferson

County Jail and employed Doyle and Johnson.  Defendant Woods is the Sheriff of Jefferson County

and is responsible for the operation of the Jefferson County Jail.

*B.  Facts*

The following facts are derived from plaintiff's first amended complaint (docket entry no.

32-2).

> On November 30, 2007, Plaintiff John Franklin was arrested and transported
> to the jail on a public intoxication charge.  Shorter after 8:30 p.m., Mr.
> Franklin was brought in to the booking area, where he waited for almost five
> hours for Jefferson County personnel to process him.  As Franklin sat waiting
> to be booked in, he watched arrestees who arrived at the jail well after he did
> be processed and removed from the booking area.
>
> At approximately 12:40 a.m. on November 31, 2007, after he had waited for
> over four hours, Mr. Franklin became concerned the jail's delay in processing
> him indicated [sic] of the officers' intent to harm him.
>
> Worried for his safety, Mr. Franklin went toward the general population of
> the jail in an effort to position himself in front of a video camera so, if his
> fears were confirmed, there would be a record of what happened.
>
> Officers Sellers and Davis pursued Mr. Franklin, and before he reached the
> end of the hallway, tackled him to the cement.
>
> Officer Sellers restrained Mr. Franklin until other officers, including Sgt.
> Doyle, arrived.  To restrain him, Sgt. Doyle used his taser on Mr. Franklin in

---

[1]At the time of filing the present action, plaintiff was incarcerated with the Texas Department of Criminal Justice on charges unrelated to the incident involved in this suit.

2

the lower back area twice before the officers handcuffed his arms behind his back.

Though Mr. Franklin was restrained at this point, Officer Doyle "drive stunned" him with the taser twice more in the lower back and another time in his thigh.

At this time, Mr. Franklin's face was bleeding and there was a noticeable amount of blood on the floor.  Sgt. Doyle and Lt. Dotson then escorted Franklin to the infirmary.

In the infirmary, though Ms. Franklin was handcuffed, Sgt. Doyle tased him twice more in the left side of the chest as the nurses attempted to check Franklin's injuries.

Sgt. Doyle continued to tase Mr. Franklin, who by this time was lying on the floor of the infirmary, twenty more times as the other officers attempted to put him in leg-irons and strap him to a back board.  The officers secured Mr. Franklin to the board using handcuffs and leather straps.  One strap ran across his chest.  Both hands were cuffed and restrained with leather straps.  A leather strap was placed across the top of his legs and both ankles were similarly secured.  The officers placed a helmet on his head to keep him from injuring himself.  Officers then picked up the backboard with Franklin secured on it, and placed him on a gurney.

Even though Mr. Franklin was fully restrained to the gurney and surrounded by six officers at this time, Officer Johnson struck him at least three times in the throat and chest to prevent him from attempting to lift his head up off of the backboard. . . . .

Officer Johnson broke bones in Mr. Franklin's neck by striking him in the throat, using excessive force.

As Mr. Franklin squirmed while fully restrained and secured to the board, Sgt. Doyle again "drive stunned" Mr. Franklin in the abdominal area by pushing the taser directly into his side. . . .

Mr. Franklin was taken to Elizabeth Hospital where CT scans were taken of his head and neck.  He was advised that he had broken bones in his neck as a result of being punched while secured to the gurney, and other conditions that needed further treatment.

Mr. Franklin was never booked into the Jefferson County Jail on November

30, 2007, or any time thereafter. He was released from custody at the hospital.

Mr. Franklin was never charged for the public intoxication offense that lead to his arrest that evening, nor anything else that happened while he was at the Jefferson County Jail.

An investigation into the incident concluded that Doyle and Johnson committed the criminal offense of "criminal oppression."

*Id*. 2-4.

*C. Procedural Posture*

On March 11, 2011, plaintiff filed his motion for leave to file his amended complaint which was subsequently granted on June 1, 2011. Plaintiff filed his amended complaint seeking relief for violations of his 4th and 14th Amendment rights and 42 U.S.C. § 1983. Specifically, plaintiff alleges he was subjected to excessive use of force in violation of the Fourth and Fourteenth Amendments when officers handcuffed and bound him to the backboard and then proceeded to tase and beat him, despite him having already been restrained, while defendants allegedly knowingly subjected him to a substantial risk of physical harm and to unnecessary pain caused by striking his neck several times. *Id*. In addition, plaintiff argues the actions of defendants, done under color of law and official authority, intentionally, and with complete, deliberate, conscious and callous indifference to plaintiff's constitutional rights, deprived him of his right to be free from inexcusable and arbitrary use of excessive force, proximately causing him injury. *Id*. Finally, plaintiff contends defendant Jefferson County, as a matter of policy and custom, with deliberate conscious and callous indifference to citizens' right to be free from the use of excessive force, authorized, tolerated, and institutionalized the practices and ratified the alleged illegal misconduct, in part through failure to adequately train and supervise its personnel, proximately causing plaintiff the deprivation of those

federal rights resulting in the injury he suffered.  *Id*.

Plaintiff also asserts a cause of action for assault under Texas common law and seeks injunctive relief, permanently "enjoining defendants Jefferson County and Woods, their employees, agents, servants, successors-in-office, and all those acting in concert with them, from continuing to exert arbitrary and excessive use of force."  *Id*.  Plaintiff seeks compensatory and punitive damages in addition to attorneys' fees and costs.  Plaintiff also argues he is entitled to a declaratory judgment.

## II.  THE MOTION FOR SUMMARY JUDGMENT

### A.  Statement of the Issues

Defendants move for summary judgment and outline the statement of the issues as follows:

1.  Does Jefferson County have a policy, procedure or custom for allowing its officers to employ excessive or unreasonable use of force?

2.  Was Jefferson County deliberately indifferent in failing to train its officers?

3.  Was Jefferson County deliberately indifferent in failing to supervise its officers?

### B.  Defendants Statements of Material Facts[2]

On Friday November 30, 2007, in the evening hours, the Plaintiff John Franklin was arrested by the Nederland Police Department for public intoxication.  Franklin was then transported by the Nederland Police Department to the Jefferson County Correctional Facility located on Highway 69 of Beaumont, Texas.

During the course of that evening shift, two officers attempted to escort Franklin to change into a jail uniform.  At that time, Franklin was not physically restrained in any manner.  Franklin then bolted from the escorting officers in an attempt to flee.  The officers pursued Franklin throughout the facility when Franklin then attempted to exit the building by running through a metal door that led outside to the breezeway.  Franklin then fell onto the outside concrete sidewalk while fleeing, slightly injuring his mouth and face. The two corrections officers were still in pursuit of Franklin at this time and

---

[2]Defendants did not provide a statement of undisputed material facts as required by Local Rule CV-56.

were able to subdue him when he fell to the sidewalk. The officers attempted to restrain Franklin but he was resisting violently, and the two officers failed to secure him. One of the corrections officers had severely injured his right shoulder during this pursuit (which later required surgery).

During the time the pusuit [sic] of Franklin was in progress, the pursuing officers were radioing other officers on duty of the situation. After receiving the radio transmission, other officers and supervisors were then enroute [sic] to assist the pursuing officers to help restrain Franklin. Franklin violently resisted any and all attempts to restrain him, even as the other officers arrived to assist. Franklin's struggle and combativeness then became even more violent. The officers were attempting to handcuff Franklin but were unable to get his hands cuffed behind his back.

At that time the Defendant Bryan Doyle, one of the supervisors on duty, was assisting the other officers in an effort to restrain Franklin. Sgt. Doyle deployed a taser device in a "drive stun" mode on Franklin and the other officers were able to gain brief control of Franklin's arm. Franklin continued to be extremely combative and refused to cooperate, except for very brief periods whenever the taser was used by Sgt. Doyle.

Franklin then refused to stand up and walk so the officers physically carried Franklin to the infirmary to be examined by a nurse on duty. While in the infirmary, Franklin was continuing to fight, spit and kick at the officers and he was intentionally banging his head on the floor and against the walls. The officers then had to place a padded helmet on Franklin's head to avoid serious injury. Franklin became so violent and combative again that the nurse told the officers and supervisors that Franklin should be taken to the hospital because he was too violent for her to treat him there.

The officers then attempted to restrain Franklin on a solid backboard so he could be transported to the hospital. Officers attempted to place leg restraints on Franklin because he continued kicking at them. Sgt. Doyle used the taser device to compel Franklin to comply with the officers' commands to stop resisting. Officers were then able to secure Franklin to the backboard. Franklin continued to resist and was still extremely violent. The officers then obtained a medical gurney to move Franklin to an ambulance that had been called. Franklin still attempted to fight and resist the officers and attempted to overturn the gurney. Finally the officers were able to place Franklin in the ambulance that took him, and the officer injured in the earlier pursuit, to Christus St. Elizabeth Hospital in Beaumont. Later, the hospital records of Franklin's medical treatment indicated both amphetamines and valium in his body.

6

An internal affairs investigation was later initiated regarding the incident. After the investigation was conducted, the findings were turned over to Sheriff Woods.  Sheriff Woods ultimately terminated Brian Doyle and Dwayne Johnson from employment, indicating that he believed the two officers had used excessive force on Franklin in violation of the Sheriff's Department policies and procedures.  Doyle was terminated for using excessive force with the taser and Johnson was terminated for using excessive force by striking Franklin with his fist.  The Sheriff's Department then turned the cases over to the District Attorney's Office for evaluation.

The Jefferson County District Attorney's Office presented the results of the investigation to a duly empaneled Jefferson County grand jury.  The grand jury did not find probable cause of violation of the law in the force used against Plaintiff John Franklin and subsequently cleared, or "no billed" both officers for the allegation of official oppression under § 39.03 of the Texas Penal Code.

## III.  SUMMARY JUDGMENT EVIDENCE[3]

### A.  Defendants

Defendants rely on the following in support of their motion for summary judgment: Exhibit A: Plaintiff's Amended Complaint; Exhibit B: affidavit of Sheriff Woods; Exhibit C: Applicable Jefferson County Policies, Procedures and Code of Conduct; Exhibit D: Jefferson County policy regarding Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE") Licensing; Exhibit E: TCLEOSE training records of Doyle and Johnson; and Exhibit F: excerpts of deposition testimony of Sheriff Mitch Woods.

### B.  Plaintiff

Plaintiff relies on the following in response to defendants' motion for summary judgment: Exhibit A: excerpts of deposition testimony of Sheriff Mitch Woods; Exhibit B: excerpts of deposition testimony of Bryan Doyle; Exhibit C: excerpts of deposition testimony of Captain Danny

---

[3]Neither plaintiff nor defendants tendered any objections to the summary judgment evidence used by the opposing party.  Both did file a Motion in Limine to exclude expert testimony at trial.

Walker, Volume 1 and 2; Exhibit D: excerpts of deposition testimony of Roger Clark, retained

expert; Exhibit E: excerpts of deposition testimony of Dwayne Johnson; Exhibit F:  excerpts of

deposition testimony of Deputy Erik Boman; Exhibit G: TCLEOSE training records of Johnson;

Exhibit H: Taser Training Academy statement regarding *Beaver v. City of Federal Way*; Exhibit I:

List of Excessive Use of Force Compalints in Jefferson County from 1997 to 2009; Exhibit J: Letter

from Sheriff Woods to Officer Anthony Prudhomme with letter of reprimand and 1 day suspension

without pay regarding excessive force IA06-30; Exhibit K: letter from Sheriff Woods to Officer

Steve Hilton with final decision finding excessive force complaint IA06-37 with merit and given 5

days off without payment; Exhibit L: cd copy of Hilton video from excessive force investigation;

Exhibit M: cd copy of Cole video from excessive force investigation; Exhibit N: cd copy of Franklin

video from excessive force investigation; Exhibit O: Jefferson County Corrections Facility June 18,

2010 policies regarding use of force; Exhibit P: Jefferson County Corrections Facility November 13,

2002 policies regarding use of force; Exhibit Q: excerpts of deposition testimony of Officer Jeannette

Dotson; Exhibit R: excerpts of deposition testimony of Johnny Lynn Vickery, Jr. From Roberts trial;

Exhibit S: excerpts from deposition of Rodney George Cole, II from Roberts trial; Exhibit T: Chart

of Jefferson County Year End Statistics for Fiscal Year 2007; Exhibit U: Resume of Expert Roger

A. Clark; and Exhibit V: cd copy of Vickery video from excessive force investigation.

**IV. DISCUSSION**

*A.  The Legal Standard For A Summary Judgment Motion*

Summary judgment is appropriate when there is no genuine dispute as to any material fact,

and one party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  Courts must consider

the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions

on file, in the light most favorable to the non-movant.  *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  *Celotex*, 477 U.S. at 322-23; *ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).  Furthermore, there must be adequate proof in the record showing a real controversy regarding material facts.  "Conclusory allegations," unsubstantiated assertions, or the presence of a "scintilla

of evidence" is not enough to create a real controversy regarding material facts.  *See, e.g. Lujan v. National Wildlife Federation,* 497 U.S. 871, 902, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir. 1994).  In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

B.  *42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 creates a cause of action against any person who, under color of law, causes another to be deprived of a federally protected constitutional right.  Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state...subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress....

Section 1983 was promulgated to prevent "...[a government official's] [m]isuse of power, possessed by virtue of state law and made possible only because the [official] is clothed with the authority of state law."  *Johnston v. Lucas*, 786 F.2d 1254, 1257 (5th Cir. 1986); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (Eighth Amendment); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (Fourteenth Amendment); *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).  Section 1983, however, does not grant a cause of action for every action taken by a state official.  *Whitley*, 106 S.Ct. at 1084.

Only two allegations are required in order to state a cause of action under 42 U.S.C. § 1983.  "First, the Plaintiff must allege that some person has deprived him of a federal right.  Second, he

10

must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Manax v. McNamara*, 842 F.2d 808 (5th Cir. 1988).

1.   Arrestee or Pretrial Detainee?

As a threshold matter, the Court must determine whether the legal standard of the Fourth or Fourteenth Amendment applies in the present case.  In his amended complaint, plaintiff appears to argue his civil rights were violated due to the defendants' alleged use of excessive use of force pursuant to 42 U.S.C. § 1983, in violation of both the Fourth and Fourteenth Amendments. Defendants, in their motion for summary judgment, appear to argue that plaintiff was still an arrestee and employ the Fourth Amendment analysis.  Plaintiff, however, in his response to defendants' motion for summary judgment, argues that the Fourteenth Amendment should apply as he became a pretrial detainee when the arresting officers left him at the jail.[4]

The indicia of whether an individual is an arrestee or a pretrial detainee are whether (1) the incidents of arrest had been completed, (2) the plaintiff had been released from the arresting officer's custody, and (3) the plaintiff had been in detention awaiting trial.  *See Hernandez v. Boles*, 184 F.3d 819, *2 (5th Cir. June 17, 1999) (internal quotations omitted) (not designated for publication) (citing *Valencia v. Wiggins*, 981 F.2d 1440, 1443-44 (5th Cir. 1993)); *see also Watts v. Smart*, 328 Fed. Appx. 291, 293 (5th Cir. 2009) (per curiam) (not designated for publication) (whether defendants violated plaintiff's constitutional rights as a pretrial detainee is governed by the Due Process clause of the Fourteenth Amendment).  As evidenced by the affidavit of Cory Davis attached to defendants Johnson and Doyle's motion for summary judgment, plaintiff was already booked-in to the Jefferson

---

[4]It would appear, therefore, plaintiff is abandoning any claim under the Fourth Amendment as an arrestee.

County Jail and was in a holding cell before Officer Davis and Sellers went to retrieve him to get plaintiff ready to "dress out" before going to the N-Dorm.  *See* Exhibit B, attached to defendants' motion for summary judgment.  As such, plaintiff was at all relevant times a pretrial detainee and thus the analysis should proceed under the Fourteenth Amendment due process of law guarantees rather than the Fourth Amendment's prohibition of "unreasonable seizures" or the Eighth Amendment's prohibition of "cruel and unusual punishment."  *See Valencia v. Wiggins*, 981 F.2d 1440, 1443-44 (5th Cir. 1993); *see also Gilbert v. French*, 665 F.Supp.2d 743, 756 n. 64 (S.D. Tex 2009) (citing *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) (constitutional rights of pretrial detainees flow from the procedural and substantive due process guarantees of the Fourteenth Amendment).

The standard, however, for analyzing an excessive force claim under 42 U.S.C. § 1983 is the same for a pretrial detainee invoking the Due Process Clause or a convicted prisoner invoking the Eighth Amendment.  *Valencia*, 981 F.2d at 1447.  This right is violated if there is (1) more than a *de minimis* injury, (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force was objectively unreasonable.  *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). To determine whether the force was excessive, the inquiry is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  *Valencia*, 981 F.2d at 1446.  "Often, of course, there will be no evidence of the detention facility official's subjective intent, and the trier of fact must base its determination on objective factors suggestive of intent."  *Id*.  Some of these factors would be (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of the forceful response. *Id*. at 1447, n. 29.

12

A constitutional violation does not occur with every touching or contact.  *Id*.  The "Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id*. at 9-10.  The amount of force must be judged in the context in which it is used.  *Id*. at 9 (quoting *Johnson v. Glick*, 481 F.2d 1029, 1033 (2nd Cir. 1973), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

As addressed in a separate memorandum regarding defendant Doyle and Johnson's motion for summary judgment, this Court found plaintiff had put forth sufficient evidence to create a fact issue preventing summary judgment on the individual defendants' defense of qualified immunity.

2.  Sherriff G. Mitch Woods

Plaintiff sued defendant Woods in his official capacity as Sheriff of Jefferson County.  *See* Amended Complaint, docket entry no. 32, pg. 2.  Plaintiff has also sued the municipality or governmental entity Jefferson County.  Defendant Woods argues in his motion for summary judgment that since being sued in one's "official capacity" is the same as suing the governmental entity or municipality itself, that all claims against him in his official capacity as Sheriff of Jefferson County be dismissed.  *See* Motion for Summary Judgment, docket entry no. 57, pg. 12.

Plaintiff, in response to defendants' motion for summary judgment concedes that defendant Woods in his official capacity is a party redundant to Jefferson County as a defendant in this case.  Plaintiff states "[p]laintiff does not dispute the legal principle that the two parties are synonymous, and therefore for the remainder of this Response will refer to both as "Jefferson County."  Plaintiff does not oppose dismissing Sheriff Woods in his official capacity."  *See* Plaintiff's Response to Defendants Jefferson County and Mitch Woods' Motion for Summary Judgment, docket entry no.

13

69, pg. 1.  Based on the foregoing, summary judgment will be granted as to any claims against defendant Woods in his official capacity as Sheriff of Jefferson County and those claims will be dismissed.

### 3.  Local Government Liability Under Section 1983

To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy or custom (2) promulgated by the municipal policymaker, (3) was the moving force behind the violation of a constitutional right. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).  It is well-established that a municipality is not liable under § 1983 on the theory of *respondeat superior*.  *Monell*, 436 U.S. at 694.  Cities face § 1983 liability only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ."  *Id*.

Official policy or custom can be established in several ways.  An official policy may be a policy statement, ordinance, regulation, or decision that has been officially adopted and promulgated by a policymaker.  *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*).  A policy may also arise from a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  *Id*.  Finally, a policy or custom may exist as the basis for § 1983 liability, especially in failure to train cases, where the need to take some action to control local governmental agents is so obvious, and the inadequacy of existing training so likely to result in the violation of constitutional rights, that a municipality's failure to train its employees demonstrates a "deliberate indifference" to the rights of its inhabitants.  *City of Canton*

14

*v. Harris*, 489 U.S. 378, 389-90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

A policy is promulgated by the municipal policymaker when it "results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). "[I]t has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (citing *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)); *see Williams v. Kaufman Cnty.*, 352 F.3d 994, 1013 (5th Cir. 2003); *Brady v. Fort Bent Cnty.*, 145 F.3d 691, 699 (5th Cir. 1998), *cert. denied*, 525 U.S. 1105 (1999); *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995). Hence, plaintiff correctly identifies Sheriff Woods as the policymaker in the present case.

Lastly, a plaintiff must establish that the policy was the "moving force" behind the violation. That is, there must be a "direct causal link" between the policy and the violation. *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). This requires "more than a mere 'but for' coupling between cause and effect." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (citations omitted). The Fifth Circuit has emphasized that the moving-force element of municipal liability "must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.'" *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). But if a policy is found to have a "known or obvious" consequence of infringing on federally protected rights in the first step of the

15

test (which may be found in failure to train cases), it is difficult to see how such a policy could fail

to be a "moving force" behind these known or obvious harms when they finally come to fruition, as

is required by this third step.  *See Bryan Cnty.*, 520 U.S. 409-10 ("the high degree of predictability

may also support an inference of causation-that the municipality's indifference led directly to the

very consequence that was so predictable.").

 a.  Policy or Custom Allowing Excessive Use of Force

 Plaintiff does not appear to allege Jefferson County has an official policy of excessive use

force that has been officially adopted and promulgated by a policymaker.[5]  However, to the extent

plaintiff asserts such a claim, an official policy usually exists in the form of written statements,

ordinances, or regulations, but may also take the form of a widespread practice that is "so common

and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski v. City

of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Houston*, 735 F.2d 838,

841 (5th Cir. 1984) (en banc)).  A policy or custom is official only "when it results from the decision

or acquiescence of the municipal officer or body with 'final policy-making authority' over the

subject matter of the offending policy." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct.

2702, 105 L.Ed.2d 598 (1989).

_____

 [5]Although plaintiff states in his amended complaint, "Defendant Jefferson County, as a matter of policy and custom, with deliberate conscious and callous indifference to citizens right to be free from the use of excessive force, authorized, tolerated, and institutionalized the practices and ratified the illegal misconduct herein detailed, in part through failure to adequately train and supervise its personnel, proximately causing Mr. Franklin the deprivation of those federal rights resulting in the injury he suffered," the Court interprets this as a theory of a policy or custom of failure to train and supervise.  *See* Amended Complaint, docket entry no. 32-2, pg. 5.  The Court acknowledges it is not entirely clear what is being alleged by this statement.  Regardless, plaintiff's response to defendant G. Mitch Woods and Jefferson County's motion for summary judgment concentrates solely on an inadequate training theory and would appear to abandon an official policy or custom theory of excessive force, if one was ever asserted.  Because defendant Jefferson County moved for summary judgment on this claim, and out of an abundance of caution, the Court will proceed as if this claim was asserted.

A plaintiff must also show that, if an official policy is not facially unconstitutional, it was adopted "with 'deliberate indifference' as to its known or obvious consequences.'" *Johnson*, 379 F.3d at 309; *see also Piotrowski*, 237 F.3d at 579. Deliberate indifference is beyond negligence or even gross negligence; it "must amount to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992); *see also Conner v. Travis, Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000).

In the present case, plaintiff has failed to show an official policy or custom of excessive use of force promulgated or approved by the relevant policymaker was the moving force behind, or actual cause of, the constitutional injury. The summary judgment record includes the Jefferson County Sheriff's Department use of force policy, which states: "[t]he amount of force used in handling an uncooperative inmate shall not be excessive. The amount of force used in handling an uncooperative inmate shall be only that amount reasonably believed to be necessary to maintain the security of the facility or the security or safety of the officers and other inmates. (Penal Code 9.53)." *See* Exhibit C attached to defendant G. Mitch Woods and Jefferson County's Motion for Summary Judgment, docket entry no. 57-3, pg. 8; *see also* Exhibit O attached to Plaintiff's Response to Defendants' Motion for Summary Judgment. Furthermore, the relevant Code of Conduct states: "[t]he "Code of Conduct" of the Jefferson County Sheriff's Department is designed to promote efficiency, discipline, and good public relations by setting forth policies governing the conduct of all officers of the Sheriff's Department. *Id.*, Exhibit C of defendants' Motion for Summary Judgment (emphasis in original), pg. 3. It also states:

No. 100-10

Officers shall not use verbal abuse, excessive force, violence, or mistreat any

person.  Officers shall respect the rights of individuals, and shall not engage

in discrimination, oppression or favoritism.  Officers shall maintain an

impartial attitude toward citizens, complainants, violators or suspects.

Finally, Sheriff G. "Mitch" Woods testified in his affidavit about the policy, stating as follows:

> As is mandated by the Texas Commission on Jail Standards, our correctional facility has to undergo rigorous annual inspections by the commission and pass all of the state mandated inspection areas.  These include, but are not limited to, the number of staff, officers and supervisors available for the safe, secure and effective operation of the jail.  Our inspection also entails the number of officers and supervisors assigned to operate the facility on a daily basis and the levels and quality of the food, medical care, and living area for each inmate.  We handle on an average approximately one-thousand inmates at any given time.

> It is our policy of the Jefferson County Correctional Facility that excessive force shall not be used against any inmate.  This prohibition against the use of excessive force is in our Policy and Procedures Manual as well as our Code of Conduct.  The Texas Commission on Jail Standards also inspects our operational records including our policies and procedures we have in place.  Over the past 15 years I have been sheriff, our correctional facility has never failed to pass its annual jail certification inspection.

> I have read the allegations regarding a policy of excessive force in the lawsuit filed by John Franklin against Bryan Doyle, Dwayne Johnson and Jefferson County.  Our policy regarding use of force is clear.  Likewise, all of our law enforcement and corrections officers must be certified through the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE).  Monitored by that state agency, all of our officers must pass the state required written licensing exam and undergo extensive on-the-job-training and meet all of the other TCLEOSE requirements to be employed.

> Should anyone complain that an officer used unreasonable and/or excessive force, we will always investigate that complaint, just as it was done in Mr. Franklin's case.  Whether the complaint comes from a supervisor, another officer, an inmate, or civilian, we will conduct an investigation through our Internal Affairs Division.  The Internal Affairs Division will conduct an investigation to determine whether the complaint has merit and whether the complaint, especially excessive force complaints, indicates there may have

18

been a violation of the law.

Regarding the lawsuit filed by Mr. Franklin, I am aware that he was struck by Dwayne Johnson and "tased" numerous times by Sergeant Doyle. When I viewed the reports and video tape and internal affairs investigation of the incident, I suspended and ultimately terminated the employment of both Johnson and Doyle.  I then requested the District Attorney's Office to evaluate the cases and the results of the IAD investigation.  The DA's Office then presented the evidence to a grand jury.  I understand that both men were "no-billed" for the allegations of official oppression.

Although the force used by Johnson and Doyle against Franklin that night may not have violated the law, I just felt it was unreasonable under the circumstances and it violated our policies and procedures and our departmental code of conduct.

*See* Exhibit B, attached to defendant G. Mitch Woods and Jefferson County's Motion for Summary Judgment, docket entry no. 57-2, pgs. 1-2.

The foregoing written policies do not support a claim of municipal liability.  Furthermore, the policy to investigate any complaint of excessive or unreasonable use of force, to suspend and/or terminate employees who violate such policies, and then turn them over the District Attorney's office for potential criminal investigation, as laid out by Sheriff Woods in his affidavit, clearly do not support a claim of municipal liability.  Although plaintiff cites to prior incidences to show a pattern, plaintiff uses the prior incidences to flesh out a theory of inadequate training and not a theory of a policy or custom of excessive use of force.  *See* Exhibit I, attached to Plaintiff's Response to Defendants' Motion for Summary Judgment, docket entry no. 69-3.  Even assuming those prior incidences have been presented to show a policy or custom of excessive force, a  review of those incidences, however, would show: (1) complaints made by not only inmates but various personnel from the Jefferson County Jail who were concerned about other personnel's actions, (2) that they

19

were investigated, and (3) that action was taken where deemed warranted.[6]  *Id*.  The relevant question is whether the prior uses of force raise a fact issue as to a pattern of excessive force that is "so common and well-settled as to constitute a custom that fairly represent municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).  The fact that other officers and supervisors feel comfortable initiating complaints calls into question the existence of a common and well-settled pattern of excessive force that would establish a custom or policy.[7]  Based on the foregoing, there is no evidence in the record that would allow a reasonable jury to conclude that Jefferson County had established a municipal policy of using or condoning excessive force against pretrial detainees.  Summary judgment as to the this claim, to the extent it was asserted, will be granted.

b.  Policy of Inadequate Training

Plaintiff argues Jefferson County had no constitutionally adequate policy on taser use in the jail, and no policy prohibiting tasing people while they are restrained.[8]  *See* Amended Complaint, docket entry no. 32-2, pg. 4.  In addition, plaintiff argues Jefferson County has a policy, practice, or custom of not adequately training its officers about the proper limits of using force, and more specifically tasers, on people while in the jail.  *Id*. at 5.  Plaintiff contends this failure to train was

---

[6]From February of 1997 to May of 2009, 104 investigations were initiated. Four of those resulted in a letter of reprimand in the employees file; five resulted in a letter of reprimand and days off; two resulted in  days off; four ended in termination; and five ended in resignation.

[7]Exhibit I reveals that it was the Administration that initiated the investigation into defendant Doyle and Johnson's actions in the present case.  Sheriff Woods, Captain Walker, former Lieutenant Dotson, and members of the Jefferson County Disciplinary Review Board all considered defendants Doyle and Johnson's actions unreasonable under the circumstances.

[8]"Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983."  *See Canton*, 489 U.S. at 389.

the moving force that caused the violation of plaintiff's rights.

The standard applicable to a failure to train claim is the same as the standard for municipal liability. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). A municipality may incur § 1983 liability for inadequacy of training if a plaintiff can establish that the municipality's policy of training caused the unconstitutional act complained of. *See City of Canton, Ohio, v. Harris*, 489 U.S. 378, 379, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989); *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996); *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992). To hold a municipality liable for inadequate training, a plaintiff must prove that "(1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Baker*, 75 F.3d at 200 (citing *City of Canton*, 489 U.S. at 385-87, 109 S.Ct. at 1205-07; *Benavides*, 955 F.2d at 972).

A plaintiff must show more than that "an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct [because] . . . [s]uch a claim could be made about almost any encounter resulting in injury. . . ." *City of Canton*, 489 at 391, 109 S.Ct. at 1206. Importantly, the Fifth Circuit has stated "that proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training." *Snyder v. Trepagnioer*, 142 F.3d 791, 798 (5th Cir. 1998) (citation omitted). Rather, a

plaintiff "must demonstrate 'at least a pattern of similar incidents in which the citizens were injured

. . . to establish the official policy requisite to municipal liability under Section 1983.'" *Id.* (citation

omitted). Deliberate indifference requires that the plaintiff "show that the failure to train reflects a

'deliberate' or 'conscious' choice to endanger constitutional rights." *Snyder*, 142 F.3d at 799 (citing

*City of Canton*, 489 U.S. at 389). Notice of a pattern of similar violations is generally required. *See*

*Roberts v. City of Shreveport*, 397 F.3d 287, 294 (5th Cir. 2005) (rejecting plaintiffs' proffered

pattern where it required "an excessively high level of generality"); *see also Burge*, 336 F.3d at 371

(evidence "not sufficient to establish deliberate indifference or knowledge" that a constitutional

violation "would be a highly likely consequence"); *cf. Brown*, 520 U.S. at 412 (holding that a finding

of supervisory liability for inadequate screening "must depend on a finding that this officer was

highly likely to inflict the particular injury suffered by the plaintiff"). While the specificity required

should not be exaggerated, the cases require that the prior acts be fairly similar to what ultimately

transpired. *See, e.g., Snyder*, 142 F.3d at 798 ("[P]laintiff must demonstrate at least a pattern of

similar incidents in which the citizens were injured." (internal quotation marks and citation

omitted)).

　　　"'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal

actor disregarded a known or obvious consequence of his action." *Bryant Cnty.*, 520 U.S. at 410,

117 S.Ct. 1382. In an action for inadequate training, "a pattern of similar constitutional violations

by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference." *See*

*Connick v. Thompson*, __ U.S. __, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011). A policymaker's

"'continued adherence to an approach that they know or should know has failed to prevent tortious

conduct by employees may establish the conscious disregard for the consequences of their action –

22

the 'deliberate indifference' – necessary to trigger municipal liability." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). In contrast, "[b]asing liability on inadequate training where there is no municipal awareness of or acquiescence in a pattern of constitutional violations would potentially transform almost any encounter resulting in an injury into a valid § 1983 claim." *Kellough v. Betrand*, 22 F. Supp.2d 602, 611 (S.D.Tex. 1998) (citing *Canto*n, 489 U.S. at 391).

Nevertheless, "in certain unique circumstances, the plaintiff can establish liability based upon a single violation of constitutional rights." *Thompson v. Connick*, 578 F.3d, 293, 298 (5th Cir. 2009), *cert. granted in part*, 130 S.Ct. 1880, 176 L.Ed.2d 399 (2010), and *reversed*, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011); *Waltman v. Payne*, 535 F.3d 342, 350 (5th Cir. 2008). This "single incident" exception applies "only where the need for training was 'so obvious' that a failure to do so would mean that the policymaker was deliberately indifferent to constitutional rights." *Id.* (quoting *City of Canton*, 489 U.S. at 390); *see Waltman*, 535 F.3d at 350. The need for additional training "is considered sufficiently obvious only when the deprivation of constitutional rights is a 'highly predictable consequence' of the training deficiency." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 409); *accord Sanders-Burns*, 594 F.3d at 381.

In the present case, plaintiff puts forth both theories of liability on failure-to-train. *See* Plaintiff's Response, docket entry no. 69, pgs. 14-19. The Court, however, finds that the plaintiff's evidence is insufficient to establish deliberate indifference. With respect to the theory of a pattern of similar constitutional violations, plaintiff argues that in the six year period leading up to the incident at issue, Jefferson County sustained excessive force complaints against 11 officers. *Id.* at 17. Accordingly to plaintiff, "[t]his was roughly one complaint every six months. Notably, in the

23

final two incidents – with Hilton in September 2006, and Cole and Vickery in April 2007 – officers attacked arrestees during the book-in process.  In both cases, the videos which captured the incidents unambiguously revealed the officers attacked their victims without provocation."  *Id*.  Plaintiff also notes that defendant Doyle was "peripherally involved" in the latter incident when he "high fived" Vickery on the security video after Vickery assaulted Roberts.  *Id*.

Plaintiff provides specific evidence as to only three of the eleven incidences, however.  *Id*. at 7.  With respect to Officer Anthony Prudhomme, according to plaintiff, he was ultimately disciplined with a letter of reprimand and a day off without pay for using excessive force on an inmate whom he slammed into a cell wall without provocation in July of 2006.  *Id*.  On September 19, 2006, an internal affairs complaint was filed against Officer Steve Hilton who was ultimately disciplined with a letter of reprimand and five days off for slamming a person into the ground during book, again without provocation.  *Id*.  The last incident involved an altercation between two officers, Rodney Cole and John Vickery, who were accused of using excessive force on a young arrestee.  *Id*. Cole was alleged to have punched the arrestee  in the mouth twice without provocation and Vickery was alleged to have grabbed him and forcefully threw him into a wall.  *Id*. at 8.  Cole and Vickery were ultimately fired and found guilty of official oppression.  *Id*.

Plaintiff, nonetheless, has simply failed to put forth sufficient evidence of knowledge of a pattern of similar incidents or "notice of a pattern of similar violations."  *Estate of Davis v. N. Richland Hills*, 406 F.3d 375, 383-84 (5th Cir. 2005).  Based on the evidence before the Court, none of the prior incidences plaintiff points to actually involve the use of a taser and/or the use of neck strikes while officers were attempting to restrain an arrestee or detainee.  Plaintiff appears to argue that generally, they all involve excessive use of force and thus are sufficient to establish a pattern for

24

deliberate indifference.  This is simply insufficient to meet the stringent standard that requires that "prior acts be fairly similar to what ultimately transpired."  *Id.*  Plaintiff's proffered evidence of a pattern requires an excessively high level of generality, as it consists of a handful of tangentially related excessive use of force incidents, most of which do not even involve the same officers.  The evidence appears to suggest that this complaint of excessive tasering and the use of deadly force by way of neck strikes is the first of this type received by the Jefferson County Sheriff's Department. Though other citizens have clearly made prior allegations of excessive use of force, a municipality or supervisor must have notice of a pattern of similar violations and the officer's prior conduct must actually "point to the specific violation in question." *Id.* at 383.  Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in questions." *Lewis v. Pugh*, 289 Fed. Appx. 767, 2008 WL 3842922, *4 (5th Cir 2008) (not designated for publication) (quoting *Davis* at 382-83).

Here, other than the fact that the prior incidences plaintiff points to involve alleged violence against detainees at the Jefferson County Jail committed by officers, there is little to no similarity between those incidences of excessive use of force without provocation against detainees, and the present incident with plaintiff wherein officers contend he was out of control and the actions taken were in an effort to subdue and restrain him for his safety and others.  In sum, there is no evidence of municipal awareness of or acquiescence in a pattern of constitutional violations or conduct from which it could be reasonably concluded that the County made a deliberate or conscious choice to endanger constitutional rights.

Plaintiff also argues the single-incident exception.  The single-incident exception to the deliberate indifference requirement is narrow.  *See Estate of Davis*, 406 F.3d at 385-386.  "To rely

25

on this exception, a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force" behind the constitutional violation. *Roberts*, 397 F.3d at 295 (quoting *Brown*, 219 F.3d at 461). A municipality may be held liable only for "acts which the municipality has officially sanctioned or ordered." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). A municipality can incur liability based upon the isolated actions or decisions of municipal officials only if such an official possesses "final policymaking authority." *Id.* (quoting *Pembaur*, 475 U.S. at 483). Finally, "the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business." *Id*.

In the one recent case in which the Fifth Circuit has found a single incident sufficient to support municipal liability, there was an abundance of evidence about the proclivities of the particular officer involved in the use of excessive force. *See Bryan County*, 219 F.3d at 462 (finding deliberate indifference based on the police officer's known "personal record of recklessness and questionable judgment," inexperience, exuberance, and involvement in forcible arrest situations). On the other hand, the Fifth Circuit has rejected claims of deliberate indifference even where a municipal employer knew of a particular officer's propensities for violence or recklessness. *See, e.g., Davis*, 406 F.3d at 382-85 (finding no deliberate indifference even though city was aware that officer fired weapon inappropriately, had a propensity for violence, and had received citizen complaints about the officer); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (rejecting claim of deliberate indifference even though evidence showed officer was extremely stressed, may

have had a quick temper, and was aggressive).  The Fifth Circuit has been wary of finding municipal

liability on the basis of a single incident to avoid running afoul of the Supreme Court's consistent

rejection of *respondeat superior* liability.  *See Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir.

2010) (referencing *Pineda,* 291 F.3d at 334-35 (noting that the court rarely finds municipal liability

for a failure to train claim on the basis of a single incident).

Here, plaintiff does not allege or offer evidence that officer Johnson or Doyle had a

propensity for using excessive force, violence, or were otherwise reckless.[9]  In fact, there is nothing

in the present record showing either officer had been previously been disciplined.  Although Fifth

Circuit case law does not appear to specifically require evidence of such character traits, the Fifth

Circuit does believe such evidence is certainly "probative in determining that a 'highly predictable'

consequence of sending the particular officers into a particular situation would be a constitutional

violation."  *Id*.  Plaintiff's failure to produce any evidence as to excessive force used by either officer

Johnson or Doyle prior to the incident at issue, combined with what appears to be untarnished

records of the officers in question, compels the conclusion that the need for additional training was

not sufficiently obvious in this case.

Although plaintiff argues that a "highly predictable" consequence of the shortcomings in

Jefferson County's training would be an officer tasering an inmate far too many times or an officer

using a throat strike on a restrained inmate, this is not a situation like Bryan County in which *no*

training was provided.  Based on the present facts before the Court, the Court finds them insufficient

---

[9]The only evidence plaintiff possibly offers that might relate to a propensity for using excessive force, is the video from the Vickery & Cole incident wherein Officer Doyle can be seen giving Vickery a "high five" after assaulting Roberts.  Exhibit M, Cole Video; Exhibit V, Vickery Video.  Plaintiff, however, does not outline any history regarding either defendant showing such a propensity in his argument section relating to the single incident theory.

to demonstrate that plaintiff's injuries were a "highly predictable consequence" of such alleged omissions in training.

For the above-stated reasons, the Court finds that Plaintiff has failed to establish a genuine issue of material fact as to whether the County were deliberately indifferent in their training. Defendant's motion for summary judgment as to a policy or custom of inadequate training will be granted.

### c.  Inadequate Supervision

Plaintiff also avers that  Jefferson County has a policy, practice, or custom of not adequately supervising its officers' use of force on people in the jail.  *See* Plaintiff's Response, docket entry no. 69, pg.5.  To hold a municipality liable for failing to supervise, a plaintiff must prove that the municipality supervised its employees in "a manner that manifests deliberate indifference to the constitutional rights of citizens." *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997).  A plaintiff must show that: (1) the supervisor failed to supervise; (2) a causal link exists between the failure to supervise and the violation of rights; and (3) failure to supervise amounts to deliberate indifference.  *See Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998).

Plaintiff, however, in response to defendants' motion for summary judgment on this issue has offered no evidence in support of this theory.  To prevail on a failure to supervise claim, the plaintiff must identify the supervisor who allegedly failed to perform the necessary duties and demonstrate that the identified individual(s) "had subjective knowledge of a serious risk of harm to the victims [or a category of people]." *Atteberry*, 430 F.3d at 255.  Plaintiff has failed to provide any specifics as to this theory of liability and appears to have abandoned the claim.  Without more, the Court is left to guess as to specific facts that plaintiff argues would support such a theory.  Mere

conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. *Brock v. Chevron U.S.A., Inc.*, 976 F.2d 969, 960 (5th Cir. 1992).  As such, defendants' motion for summary judgment as to plaintiff's claim of a policy or custom of inadequate supervision is granted.

## V. CONCLUSION

Defendants' motion for summary judgment should be granted as to plaintiff's claims of a policy or custom of inadequate training and supervision, as to defendant G. Mitch Woods, and as to the claims against Jefferson County for a policy or custom of excessive use of force.

An order will be entered separately.

**SIGNED** this ___9___ day of _____July_____, 2012.


KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE